We move to the fifth case this morning. Garza v. Kijakazi. We have both counsel here. Ms. Hill. Good morning. May it please the court. My name is Jennifer Hill and I represent appellant Megan Garza. Ms. Garza has been denied her social security benefits which is why we are here today arguing before you. Ms. Garza was working for her family business, answering phones when her medical conditions became too much and she had to stop working in September of 2016. Her medical conditions include major depressive disorder, generalized anxiety disorder, substance abuse addiction and remission, degenerative disc disease of lumbar spine, bilateral hearing loss, obesity, cough, shortness of breath and other medical conditions. Megan's lower back pain had begun in 2013 or at least that's when she started treating for lower back pain. Her lower back pain progressed and continued from 2013 to the present. In I believe 2016, she had an MRI in which it was determined that she had a herniated disc at L5 S1. The herniated disc did not stop there, just in her back. It continued to cause numbness through her hands, legs and feet. Ms. Hill. Yes. Could I ask you to address not just diagnoses and symptoms but the legal standard of disability here and particularly the residual functional capacity. The government tells us that there is no medical opinion in the record that would impose a more restrictive residual functional capacity than found by the administrative law judge. Is that correct? I don't believe so, your honor, and let me address that. With regards to the limitations that are specified by the ALJ, those limitations weren't any greater in the record. However, the ALJ's limitations do not include all of her medical, all the medical opinions and her treatments. That's, well that, I'm not sure that's really the standard. Is there a medical opinion that called for a more restrictive residual functional capacity? I am not aware of one, your honor. Neither am I. Thank you. There's an issue here that the appeals, you've argued that the ALJ erred at both steps two and three of the analysis. The government says that's, you're raising that for the first time. Your reply directs us to docket number 15 in the district court, which was plaintiff's motion for summary judgment. I've looked at that document and I, maybe I'm missing something, but I don't see it. I don't see the, I don't see an argument in that document or in your response to the, to the commissioner's motion for summary judgment that there was an error at steps two or three. Well, the errors raised at steps two and three go also to the residual functioning capacity and the dismissal of Ms. Garza's treating physician's opinions and records. What doctors, which treating physician's opinions were disregarded? Um, I don't recall offhand, your honor. That is sort of central to your claim. So what I recall your honor, it was, um, Dr. Yoshi, uh, psychiatrist, and internist, um, but that's go. What did they say that the ALJ disregarded? The ALJ clearly was aware of their treatment, their diagnoses, um, took things into account in terms of the residual functional capacity that accommodates both physical and mental health limitations. Um, was there something specific in a medical treating provider, um, that, uh, that calls for a remand here? Well, um, specifically your honor, uh, the ALJ disregarded or in considering listing 104, um, state that there was no compressed nerve. There is a medical treatment and records from Dr. Yoshi in which it demonstrates that she had, um, the herniation was pressing upon the nerves. It was causing the leg, um, the leg pain and the radiation of the pain down her leg. I'm sorry. When was that? I believe she last treated with Yoshi in 2013. Is that right? No, she began her treatment with Yoshi in 2013. Your honor, I can't be, um, specific as to when that was, but I believe it was, um, in 2017 or 2018. And she continued to report pain with her, uh, back to Dr. Badescu in, um, 2017 as well. Okay. Thank you. Uh, another matter I don't believe was, uh, specifically addressed by the ALJ in his decision was with regard to the depression and the anxiety. Um, although, um, I will concede that they did not rise to the level of extreme or marked. She did have limitations within every one of the categories. It was mild in understanding, remembering and applying information, adapting or managing oneself. It was moderate in interacting with others, concentrating, persisting, or maintaining pace. Um, so she was showing across the board that there were issues with regards to her ability to interact with others and to understand. Um, the ALJ's decision doesn't take into to account all of these issues. What's missing, what's missing from the residual functional capacity limitations? What's, what I believe is missing from it, Your Honor, is that, um, uh, they have her as a light exertion level in which, um, she states that she sleeps a lot and, and takes, um, naps and has low energy. So, um, she's not, she's not, she's not, she's not, I don't believe that she's able to, um, provide that exertion level. Furthermore, um, she talks about being fidgety and restless and unable to, um, sit for the length of time needed. And I don't believe that that is taken into consideration on the residual functional capacity as well. Um, the ALJ knew at the time of the hearing that Megan Garza had numerous absences and tardies while working for her family business. Her family business, you would think, would be the most understanding and flexible, flexible environment that she can work for. However, she was still absent and tardy often. And if the ALJ considered what the VE had testified to, you know, Megan being off task 20% or more of the time or needing more than two days off, that would have eliminated all employment, which did not occur in this case. Uh, your honors, I see my time has, um, elapsed. I just want to, uh, thank you for your consideration and a review of the brief from records. We request that this matter be reversed and remanded. And, uh, if the court finds that the disability occurred at a date later than the September 2016 date, we are open to the movement of the onset date. Thank you. Thank you, counsel. May it please the court, Nick Schwabach for the Acting Commissioner of Social Security. Your honors, Ms. Garza has the burden of proving she's disabled. She has failed to offer a single medical opinion indicating that she's disabled or she has restrictions greater than those the ALJ found. This is illuminating and persuasive on its face, and it means it can be no error in the ALJ's residual functional capacity assessment. Her discourse is in Castillo v. Estru and Best v. Berryhill. Ms. Garza also has failed to ever say with specifics what additional limitations the ALJ should have included in the record. And although Ms. Garza cites to various diagnoses, that is not the standard. She has to prove what restrictions she actually has. And here the ALJ considered almost all the things that Ms. Garza has alleged. But found that they weren't entirely consistent with the record. For instance, the ALJ relied upon the opinions of state agency reviewing psychologists, Drs. Vos and Tin, who in February and August of 2017 reviewed the record and indicated Ms. Garza could perform work involving simple instructions, routine and repetitive tasks, with limited sustained contact with the public. The ALJ essentially adopted those restrictions, finding that Ms. Garza could perform simple, routine, repetitive tasks with no more than occasional public interaction. Based on the ALJ's review of the entire record, he added additional limitations, such as only simple work-related decisions and no production rate pacework. The fact that the ALJ found Ms. Garza even more limited than the state agency reviewing psychologists illustrates reasoned consideration to the evidence Ms. Garza provided. And we see that reasoned consideration throughout the ALJ's decision. He acknowledges that Ms. Garza reported concentration deficits, but then points out on examination she had normal concentration, focus, and attention. He acknowledges that Ms. Garza alleged memory deficits, but again, he points out that on examination she has intact memory. This isn't a case where the ALJ ignored entire lines of evidence. He cites that Ms. Garza had degenerative disc disease on her February 2016 MRR. However, he points out that she maintained full range of motion, normal strength in her arms, legs, backs, and neck, that she had a normal gait at the vast majority of examinations, and she had no obvious motor deficits. I'm sorry, Your Honor. It appears that you're still on mute. My mistake. Okay. Sorry. I appreciate you recognizing that at least my lips were moving. My question is a subject on which I'm a little rusty, but there was issue. Long ago, there was a big debate about the extent to which substance abuse could play a role in disability determinations. Congress stepped in in the mid-1990s. The ALJ said here that Ms. Garza's earlier problems with opiate addiction were not a contributing factor, and as I understood Plaintiff's brief to at least object to that point at some point, if the ALJ had found that her opioid use was a contributing factor, can you explain to us what implications that would have had for the ALJ's analysis of the case? Certainly, Your Honor. So as an initial matter, Ms. Garza doesn't raise the substance abuse issue at the district court level, and therefore, it should be weighed. But if she had, so substance abuse is addressed whether it's material or not material to the ALJ's decision. So if an ALJ concludes that an individual's substance abuse materially affects their residual functional capacity to the point where they're not able to work, the ALJ then does a second analysis on whether if the substance abuse was no longer present, would that claimant still be disabled? Here, the ALJ doesn't have to go through that analysis because as the ALJ pointed out, Ms. Garza received treatment for her substance abuse, and it was successful. She indicated at the hearing that she hasn't abused substances for more than two and a half years, and the ALJ pointed out that it wasn't material because the mental impairments, depression, and anxiety continued to cause her restrictions, and that's why he added the limitations that he did. Okay, thank you. You've jarred my memory now about the two-step analysis in the case of a finding of disability, so thank you. That's correct. So here we have the ALJ relying on the opinion evidence. We also have him doing a thorough evaluation of the medical records and comparing that to what Ms. Garza alleges. As I pointed out, she has a lot of subjective complaints that aren't supported by them. The ALJ also reasonably discussed the treatment that she received. So regarding her back, he points out that at the hearing, she testified that she takes ibuprofen every other day. He also notes that she testified that she never received any surgeries for her back impairment. She never went to physical therapy for it, and she never received any injections for it, and this is despite the records showing that she was referred to a neurosurgeon, she was referred to the pain clinic, and she was referred to physical therapy. The ALJ also notes that regarding her mental health impairments that she received medication and therapy and that it approved to be effective as treatment providers noted in April of 2018 that her anxiety was controlled. And similarly regarding her back pain, treatment providers noted that Ms. Garza said that she felt well and she had no complaints regarding her back in April of 2018. And the ALJ also relied upon Ms. Garza's daily functioning, pointing out that she could perform activities that required concentration, such as driving and and that she can make sensible decisions. So here the ALJ's decision is based on substantial evidence. The opinion evidence, the treatment record showing generally unremarkable mental status contamination findings and physical evaluation findings, her conservative treatment where she had good response, and her daily activities. Now there is some mention from Ms. Garza's ALJ's analysis regarding the listings, but again Ms. Garza doesn't raise that issue at the district court level and this seemed late. But even if she had, there's no merits to her arguments as the commissioner sets forth in her brief. So because the ALJ's decision was supported by substantial evidence, this court should affirm. Hearing no further questions, the acting commissioner rests on the merits of her brief, and thank you for your time and attention to this matter. Thank you, counsel. And Mr. Mesil, your time had expired, so the case will be taken under advisement.